This court should vacate Mr. Slater's sentence and remand with directions to enforce the require that the sentence be or the sentencing be redone or reimposed using the guideline calculation from the initial pre-sentence report. This was an unequivocal waiver and I don't say that lightly. I don't like to use the words clearly and unequivocal and all that kind of stuff very much in appellate work. But I don't think I've seen a clearer waiver by a party than we have here. The government filed a written submission to the probation department indicating, and this is the least of the waivers, that it had no objection to the pre-sentence report. It then filed a written submission where it said it agreed with the drug weight calculation used in the pre-sentence report in regard to the edibles. That's waiver. And then when you look back in terms of the sort of history of the case, it took the position over and over and over for a year. If I could ask you though, with regard to the question of waiver as applied to the government. Eventually, though, before sentencing, before the final judgment was entered, right, the government said, you know, we reconsider our position. And, you know, under rule 32, it says we should be allowed to make this new presentation. The court agreed. So the court considered the argument before it entered judgment. Where did that take it out of the realm of waiver? Well, when we typically talk about waiver, we talk about waiver on appeal. That something happened in the district court and then whether or not they can present the issue on appeal. But the district courts have also talked about using waiver to prevent a party from taking a position going forward. The case that we cited, Flume, it really kind of is both the rule 32 and really this case is too. It's both the rule 32 and the waiver issue. In Flume, it was a tax case. The government took the position that they had no objections, just like they did here. And then when the defendant objected to tax losses here, defendant objects and says, we think the tax loss is down here. Government comes to sentencing and says, oh, actually, we do have objections. We think the tax loss ought to be up here. Right. And what the district court said there was they were not going to allow the government to take a particular position. In other words, assert a position and then change that position later and said it was waiver. And I think it's really important here that the court at least consider this as a waiver. The government in its brief says it was just confused. It was just uncertain about the guideline calculations and says there couldn't possibly have been a strategic reason that the government spent a year not testing these cereal bars, which I can't believe I'm up here talking about cereal bars, but okay. Sure. Yes. Edibles. Just in case you were confused. Right. There are a lot of edibles and how they are at all cases about how they should be weighed under the sentencing. Right. That they that they said they were confused. They had no prior knowledge of any of this kind of of what could have they could have tested. You're making more about this in waiver doctrine terms, because waiver doctrine is a limitation on appellate review and permits an appellate court to to hear and review an issue that was not litigated. Right. The district court. This issue was litigated. It was litigated late and the defense was sandbagged because the prosecution had said over and over again, we don't object to these drug weights on all the drugs that were found and continued that up until the day of the original sentencing hearing and then said, oh, by the way, I learned yesterday, the prosecutor said that, right, we're doing this wrong. We're weighing this wrong. We got to go get these edibles tested. Right. And the judge excused that untimely untimeliness without good cause. And the question is whether there was good cause. And that's trying to fit it in the construct of the rules as opposed to waiver doctrine. Absolutely. Well, and it really is. If we if we move to the Rule 32, I first would caution the court that I think there could be a circuit split that you would create if you held consistent with the district court that Rule 32's deadline and Rule 32's good cause requirement essentially are overridden by a district court's general obligation or duty to calculate the sentencing guidelines. The Fifth Circuit and Chung, and they really collect the cases. But there are a lot of cases, both Court of Appeals cases and district court cases that recognize that the that Rule 32 has to mean something. Right. And Rule 32 says that the court has to correctly calculate the guidelines. That's part of Rule 32. But what what got missed here, I think, is the good cause requirement in Rule 32 is there's sort of a time requirement. And that is Rule 32 says the district court may take a late objection if good cause is shown. In other words, the government has the burden to establish that good cause before the district court exercises discretion. Once the government shows good cause, then it says may. But Jacob, what if the district court had said the following? You know, I have to decide whether or not there's good cause to allow the government to make an objection. On the one hand, I think the government's tardiness prejudiced the defendant. The government, on the other hand, I think the government's only justification is that it kind of changed its mind. I also need to balance the, you know, the interest of justice. And in balancing all those, I think in the interest of justice outweighs all of those other interests, because I think I would like to calculate guideline range based upon the field facts on the ground. Would that be a sufficient use of district court's discretion? I mean, by just using the term interest of justice, I would say no. And the reason that I say that, Judge, is for the good cause portion of the rule. A judge could never consider the fact that the judge wanted to get the guidelines not only technically right, but actually correctly reflect the facts on the ground as part of a good cause analysis. I think that the court can consider lots of, this is not a very good answer, but lots of factors, right? But I think what the question, you have to pay attention to what the question is. The good cause question is, what happened here? Why are you late? It sounds like you think good cause has to be grounded on the reason for the request to delay. I think so, because what it says is the court has discretion. It says the court may take up a late objection, right? It may take up a late objection if good cause is shown. So first, you have to, the government has the burden. It has to show you a valid reason. If really what this meant was, go to the merits. Because that's sort of what that interest of justice thing is. Every time a party raises a late objection and says, I realized I did something wrong. I have a sentencing objection on the day of sentencing. I want you to hear it. It seems to me if the interest of justice is you're going to get the guidelines correct, you'd have to either continue the sentence or leave the opposing party unprepared and take the objection late. Ms. Jacobs, is this, if we agree with you, is this going to have an unintended consequence of hurting defendants? Because I can tell you after 16 years on the district court, 99.9% of the time when sentencing is scheduled and there's a request for a delay to change something, to add something, it's because defense counsel has just discovered something, defendant has said something new, then it's on the defendant that he's changed his mind about something. Is there going to be an unintended consequence? Well, I hope not. And the reason that I say that, Judge, is because it's not just what's the reason. But I think that is a big part of the question that the court had. What does good cause mean? Why did we have this delay? But courts, and we've cited these in the brief, both the district court and circuit court cases, it has to be something more than just simple neglect or a mistake, right? There has to be a good faith. I'm not prepared. I'm not ready to go yet. Right. If, okay. Well, I think that for, well, I don't know. I don't know what the circumstances are. I'm not ready. The, okay. Well, the defendant has a Sixth Amendment right to effective assistance of counsel. So, if the defendant's counsel comes in and says, I'm not ready, I think it's a real risk. It's prejudice to the defendant. It probably is prejudice to the government. So, I'm not ready. It may, it may not be. You know, again, every case is different. And that's really why this But I know what the excuse was here, right? The excuse here was the night before the sentencing, somebody in the U.S. Attorney's Office decided that the way that this case had been handled for the last, I don't even know how long, 16, 17 months was not the way they would have handled it, right? Up until that point, the Assistant United States Attorney had made a judgment call. He had made a judgment call not to have those edibles tested. Why? Well, he secured a plea saying, we're not going to use it. And I can come up with lots of other reasons. He wanted to avoid litigation. The very litigation, if we ever, I'm not going to have time, but if we got to the ratio, there could be, could have been litigation on that. He may have made a judgment that this was a fair and reasonable sentence. What happened was doubling of the guideline range, okay? The defendant went to prison, presumably for at least two more years than he would have, at least, as a result of this change of position. It may be that because these serial bars are legal, the government had made a decision not to have DEA resources in the lab used for this kind of thing. There's lots of reasons this could have happened. But the reason for the late objection was somebody in the U.S. Attorney's Office, and they say this at 435 the night before, decided they should have taken a different position. And it wasn't a legal position. Remember that when they come into that sentencing the next day, they still don't have a lab report. The briefing that happens after that hearing is, boy, the field test, it didn't even tell us if this stuff was marijuana, THC, hash, hash oil. It tests positive, but it doesn't distinguish. So, they didn't even know if there was a meritorious objection. What they knew was somebody in the U.S. Attorney's Office wanted this case handled differently. Maura, how would you best state the rule that you hope will emanate from this case? The district judge, essentially, she didn't use the words, I find good cause because, but she basically said, I have a duty, an independent duty, to correctly calculate the guidelines range. And this is an important input into that guidelines range. And so, I'm going to forgive the untimely objection and reopen this matter. The rule I think, Judge, has to be consistent with the other cases, the other circuit courts around the country who have addressed this, is that the good cause requirement, the good cause showing, has to be made independent of, or before we get to the potential merits of the objection. Good cause, Rule 32 says, the late objecting party must have a good reason. And the courts that have already looked at this, in terms of a rule, have said, it is a balancing. I can't say that, you know, if it's so many days, then they get to do this, or if it's so many more days, or if it's the defendant, or if it's the government, I can't do that. But what I can do, is I see all of the cases balancing factors like, is this a valid reason? Is it a good reason? Was there a good faith reason? And it's easy to come up with cases where the government or the defendant would have a good faith reason for bringing something late. Was this just neglect? Was there a strategic reason for what the late objecting party was doing beforehand that led to this problem? You know, is there prejudice to the other party? Was there prejudice to the not requesting for the right? I would say no, Judge. There would have been no prejudice whatsoever to the government here, if they had proceeded to sentencing. Consistent with the position they had taken. So, oh, you're looking at prejudice if you go forward, as opposed to if you continue it. I meant on the continuing. Isn't there, if good cause is found, or if a court continues a sentence, at the request of one side or the other, isn't there often prejudice to the other side? Because they want to challenge something they haven't challenged. Yes, but the easy example, I think, of this that would warrant a continuance, and again, I recognize that I'm out of time, but I hope I can just answer your question. The easy example would be something like, and I think it's in one of the cases, three days before the sentencing, the government gets a witness calls and says, the defendant has been trying to get me to lie for him, or obstruct something about the sentencing, or whatever. The defendant is currently engaged in some sort of obstructive conduct, let's say. Government comes in, day of the sentencing, or the day before the sentencing, files something and says, we need a continuance. And the reason is, we have a good faith reason, right? A valid reason, this wasn't raised consistent with the time limits in Rule 32. But instead, we need to sort this out, or we need to present this evidence, because we now have a guideline, we want to get it right, right? We want to get it right. But we want to get it right, outside these time limits, because it's occurring outside the time limits. Just like I said, it could be that a defense attorney comes in and says, I haven't even reviewed the pre-sentence report, or, you know, I've spent five minutes with my client this morning reviewing it, it's because I've been in trial. I, you know, he's got a sixth amendment right to effective assistance of counsel, I think that's a good reason. But this is not a good reason. This change of position with the US Attorney's Office the night before the sentencing is not a good faith, valid, good cause reason for this continuation. And for that reason, I apologize, I went way over my time. Sure. You've given me leave to ask one other question that has been bothering me. During the sentencing hearing, the judge goes through the guideline coverage. And as judges always do, they said, okay, do both sides agree with my guideline coverage? And the judge specifically says, do both sides concur with the court's recitation of duplicable provisions? And the government says, yes, Your Honor. And defense counsel says, yes, Your Honor. Why is that not forfeiture, or at least forfeiture of that waiver of the Rule 32? Because of all of the objections that were raised up until that point, the court said, okay, well, these are the calculations. This is the guideline range. If anyone has any objections, and both sides have no judge, they're fine. Isn't that the time for defendants? Doesn't defense counsel have obligations to preserve whatever objections they have to the guideline calculation when the judge asks? And with respect, when you say the guideline calculation, are you saying that the should have gone all the way back to the beginning guideline calculations? Or are you talking about the 1 to 167 ratio, the 1 to 167? That's why we argued plain error. I don't think it's waiver. I think it's forfeiture, like you said. And the reason is because this issue was never raised. I mean, the government tries in their brief to say, well, we've been talking about this all along. But the argument that we are making on the 1 to 167 never hit anybody's radar screen. And so it's a plain error. Are you agreeing that it is forfeiture at that time? It is forfeiture, but it is not waiver. And I'm making a very distinct, or I'm making that distinction. And that's the reason that we argue in the brief that it's reviewed for plain error. Thank you. And again, I appreciate all the extra time. Thank you. Thank you. Mr. Simpson. Good morning, Your Honors. May it please the court. I'm Scott Simpson on behalf of the United States. I'd like to start by pointing out that the court is facing quite a few issues here, as has already been pointed out. We didn't even reach the merits yet, which are also presented if we get past these preliminary issues. I wanted to point out that some of these issues here I would characterize as case management. The issue as to whether the court could consider the late objection from the government is case management. The issue of continuing the hearing to allow for testing of these THC edibles. But case management still has to have good cause under Rule 32. Correct, Your Honor. And I'd like to point out, responding to an argument that defense counsel made, Rule 32 says that the government may, I'm sorry, the court may, for good cause, allow a party to make a new objection at any time before sentence is imposed. I disagree that there's a two-step process there. The defense has said that there's a two-step process. Number one, they have to show good cause, and the district court determines whether there's good cause. And number two, then the district court exercises its discretion whether to allow that late objection. I disagree with that. May, for good cause. I think we want the district court to look at whether there is good cause, but all of that is one decision in the government's view. That is case management. That is discretion. And the reason I'm trying to distinguish these issues that we're looking at is that when we talk about case management, the standard of review there is abuse of discretion. Now, if the defense and the court want us to apply abuse of discretion to all of this, including the waiver slash estoppel issues, I suppose that would be fine with the government. But really, they are different. They are separate issues. Case management, we're applying abuse of discretion. So now if I could move to the waiver issues, and I appreciate Judge Lee's bringing up the waiver issue, the waiver by the defense. Whether we call the argument that the defense has made as to the government's action, waiver or estoppel, I'm not sure that matters a lot. I think if the court were to rule, if the court were to reverse the district court in that regard, it would have the same effect, whether it's waiver or estoppel. The issue is the government did not, at the plea hearing, it's at the plea hearing when the government particularly said, we're not planning to rely on the THC edibles for conviction or sentencing. But the government made that statement true. But the government did not say, we're not going to rely on the 1 to 167 ratio. There was no reference to that. There was no reference to the 1 to 167 ratio. So the question is, does the government agree that the calculation of the drug quantity in the first PSR was correct? Yes, Your Honor, that's correct. And that used a 1 to 1, I mean, that didn't use the 1 to 167 ratio, right? It would use the 1 to 1 ratio, correct. But a couple of issues with that, Your Honor. And one of them we've already referred to, that is the district court's duty. I'll get to that in a moment. Our position is that that was not a knowing waiver on the part of the government. That is a knowing waiver in relation to the 1 to 167 ratio. The record reflects, and I want to emphasize this, defense has talked about it, the record reflects confusion and uncertainty on factual issues and legal issues, both on the part of the government and on the part of the defense. And those issues were the content of the THC edibles, you know, what really are these? They were labeled, they and perhaps more importantly, the ability to get any testing done. It wasn't the government delaying testing. It wasn't the government saying, we don't want to worry about testing these THC edibles. The government was trying to get that from the DEA. It was having trouble doing that. Government counsel said at a pre-trial conference in May 2021, quote, the lab, I think, had the and sent the entirety of the report back, close quote. So the problem was the ability to get the testing done. And the defense recognized that through all of the various, there were quite a few status conferences and so forth. All of the parties in the court recognized that there was a problem. There was a concern with being able to get that testing done at all. And the second problem with finding that the government waived here, that the government was a stop, is that the court does have a duty to calculate the guidelines correctly. If the district court, as we know, if the district court does not calculate the guidelines correctly, the district court commits procedural error. And the district court, in this case, knew that and felt bound to, as I think one member of the panel. But how could it be procedural error if the government hadn't met its burden of proof of establishing the THC? If this had proceeded to sentencing in May or November of 2021, when it was originally scheduled, and there's nothing in the record about the cereal bars testing for THC, there would not have been an inaccurate guideline calculation based on what's in the record and the government's burden of proof. I agree, Your Honor, if that had been the case. If everyone had proceeded with not being concerned about the THC edibles that were discovered in Mr. Slater's possession, if everything proceeded according to the earlier versions of the PSR, then correct. I don't think there would have been a procedural error. Is it the obligation of the court to correctly calculate the guidelines based on what's in the record at the time? But Your Honor, once the court decided to delay things, once the court decided to delay things to allow for testing of the THC edibles, the government had information that this could be an issue. The government, it became apparent that there was a hole in the record. And so the court was justified in delaying things to fill in that hole. The concern I have with the role of the court's duty to correctly calculate the guidelines range is that there's no limiting principle on the extent to which that constitutes good cause. Essentially, any late guidelines objection is excusable on the basis of good cause if the good cause consists solely of the district court's obligation to correctly calculate the guidelines, because the court always has an obligation to calculate the guidelines. I can see the point, Your Honor, but I don't think that makes the obligation unlimited as to any kind of objection to the PSR. For example, there are all kinds of potential objections to a pre-sentence report that would not affect the guidelines. If there's an objection as to, oh, the defense says my background is an error, is my background in the PSR, or there's an error, even an error describing the offense of conviction that doesn't affect the actual guidelines calculation, the argument that we're making would not require the district court to delay things. So it's only late objections that will have an effect on the guidelines range? Yes, Your Honor. And certainly, it would depend on other factors here, on other circumstances. And here, again, it's not just the court's duty to calculate the guidelines correctly. It's also this uncertainty and concern about the content of the THC edibles and the ability to test them. And our position is once the district court knew that that issue was there, once the district court knew that there was that hole in the facts, in the underlying facts of the offense, then the court, we're not saying the court was bound, would have been required to delay things, but the court certainly was within its rights, was certainly not incorrect to delay things to clear up that record. If I could move on to the issue that Judge Lee brought up, which is the defense's action. And we believe the defense did waive application of the, did waive any objection to applying the 1 to 167 ratio. The final pre-sentence report, so this is the pre-sentence report that was in effect when the sentencing hearing actually occurred, that final pre-sentence report included the 859 grams of THC edibles in Mr. Slater's offense. And it applied the 1 to 167 ratio in calculating his drug weight for base offense level of 24 on the drug count. And at the sentencing hearing, as Judge Lee said, the defense counsel, obviously we do want district courts to say, here are my guidelines calculations, do you agree with that? And defense counsel agreed with the district court's recitation of the guidelines. And he acknowledged, I'll quote a little sentence from defense counsel at the sentencing hearing, because of the way THC is treated differently from marijuana, that's what's driving the guideline in this case, close quote. And it wasn't just that, it wasn't just lack of an objection, which sometimes we wonder is that waiver or estoppel? We believe it was waiver, because in addition to that, counsel then proceeded to argue for variance. He said, yes, I agree with that, with that guidelines calculation. Then he proceeded to argue for variance, saying, and he specifically attacked the 1 to 167 ratio. He specifically, he said the 1 to 167 ratio, you know, choosing those exact numbers, defense counsel argued, wasn't based on science. So he was accepting the application of that ratio, but he was saying, look, we ought to have a variance here, because that ratio just isn't based on science, he argued. So that strategic agreement to the guidelines calculation, reflecting the 1 to 167 ratio, coupled with his argument for variance, does amount to a waiver of objection to that ratio. To quote defense counsel's argument, that was an unequivocal waiver, that was a deliberate knowing waiver. As opposed to just arguing the best he can to get a variance. Is there anything in the record that shows that he's consciously saying, okay, I'm going to let the guidelines stand, I'm not going to challenge the 1 to 167 guidelines, but instead I'm going to try to get to that, to get a variance, to have a better shot at that? We don't know, your honor. I've never been defense counsel. We don't know for certain, but the fact that the 1 to 167 ratio earlier on was kind of an issue in the case, and then at sentencing he said, okay, I'll accept that, but then arguing for variance, specifically attacking the sentencing commission's choice of that exact ratio, I think it was very clear he's thinking, okay, I'm probably not going to succeed if I push back on the application of this ratio, so I'm going to try for variance by attacking the science behind the ratio, or he would argue the lack of science. That certainly seems strategic on the defenses. What we say, if you use that similar reasoning, it seems that the government's decision to go with the 1 to 1 ratio was strategic in the beginning because the government wanted a very simple, easy conviction and didn't want to deal with the hassle of this objectionable to the 1 to 167 ratio, and so the government made an affirmative decision to forego that argument, leave it on the side, and go forward with the plea. Your honor, we believe that the situations were very different. The defendant's waiver and the government's position were crucially different. The defense waived an objection to applying the 1 to 167 ratio in light of all the facts. The government's statement was made with incomplete information, with an inability at the time. But that's why it's a strategic decision because you don't have all the information, right? And so it's a cost-benefit analysis of all strategic decisions are, and the government decided, you know what, we're not going to wait for this, we're just going to go forward. Your honor, I can see that point. However, I think it's important to point out that here, the government changed its position before the sentencing actually occurred, when the defense and the court had plenty of opportunity to change the thinking, to change the PSR, whereas with the defense's action was right at the end, and again, the circumstances show that it was certainly strategic. If the court would look at all the, and I agree, it would be a lot of reading, all of the status conferences, the transcripts and so forth, there was a lot of discussion about this inability to get testing of the edibles, a lot of discussions about how it was going to affect things. Finally, if I could, just a minute on the merits. We haven't talked about that yet. If we get past, if the court gets past all these preliminary issues, the merits would have to be faced then. And the case law and the guidelines are clear that a defendant's sentence for a drug offense, except as stated in the guidelines for certain drugs, should reflect the entire weight of any mixture or substance containing a detectable amount of the controlled substance. In the Supreme Court, although Chapman was on, related to statutory language, it was very similar language. I see that my time has expired. If I could just finish your thought. Thank you, Your Honor. Although Chapman related to statutory language, it was pretty much the same language, very similar language. And under Chapman, it's clear that the guidelines should be applied exactly as they're written in that respect. The penalty for a drug distribution crime should include the weight of any carrier medium, this is quoting from Chapman, any carrier medium that is ingested with the drug and facilitates its distribution. So just like the LSD blotter paper in Chapman, the THC, the edible portions, I believe these are cereal bars, those that involved here is a carrier medium that facilitated the distribution of the THC edibles. The distributors, the manufacturers, choose how they're going to distribute. And here they chose to distribute using those edible bars. And the sentence correctly reflects that fact. So we would expire, but you can have a minute additional time if you have anything to say in rebuttal to Mr. Simpson's argument. I always have something to say. I'm sorry. The reason you know this wasn't strategic is nobody ever talked about the cost denial of the en banc decision. If this had been a strategic decision in any way to avoid this 167 issue, there would have been some discussion about that, and there was not. And there never was throughout the case. That cost decision is 2016. If this is something that the defendant decided to give away at some point in the case, it would have come up. This is a plain error standard. This is not waiver on the ratio issue. A couple last things. I respectfully, I disagree with the government that Rule 32, when it says may for good cause shown, entertain late objections. That may also has to mean something, right? That's the discretion. If good cause is shown, then the district court gets to decide it can entertain one or it doesn't have to. But good cause has to be shown first. And with that, I would ask that you vacate the sentence and remand for resentencing. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advisement, and we will take a brief recess so that we can bring some other students in. We'll be back in a few minutes for the remaining three cases this morning.